UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:07CV170-J

GALENDA CLOYD                                                                                          PLAINTIFF

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                                              DEFENDANT

### MEMORANDUM OPINION

Before the Court is claimant Galenda Cloyd's Complaint seeking judicial review of the unfavorable decision rendered by the defendant Commissioner denying her claims for Disability Insurance ("DIB") and Supplemental Security Income ("SSI") Benefits. After examining the administrative record, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision is supported by substantial evidence and must be upheld.

PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI benefits on September 15, 2003, alleging that she became disabled on August 14, 2000 at age 44 from depression, sleep apnea, arthritis, fibromyalgia, poor circulation, complications of menopause, diverticulitis, migraine headaches, diabetes, and hypertension (Tr. 464). She worked in the past as a substitute teacher, chicken processing inspector, nursing home RN supervisor and staff nurse, home health aide, and houseboat cleaner. She completed three years of college and has associates degrees in business and as an RN (Tr. 797). The claimant previously filed applications for benefits in 2001 and 2002 that were withdrawn at her request.

Following a hearing on September 7, 2005 at which the claimant and a vocational expert offered testimony, Administrative Law Judge Roger Reynolds ("ALJ") found that the claimant has

severe impairments including mildly "severe" obesity; diverticulitis; probable obstructive sleep apnea; low back pain secondary to degenerative disc disease; multiple myalgias, rule out fibromyalgia; non insulin dependent diabetes mellitus; dysthymia; migraines; chronic sinusitis; and antisocial personality traits (Tr. 36). These conditions prevent her from returning to her previous work; however, the ALJ found that she remains capable of performing some light and sedentary jobs, stating:

> In view of the medical and other evidence of record in this case, including claimant's written and oral assertions as to the limitations, the undersigned will assign to this individual a residual functional capacity for a limited range of light work. Light work is defined at 20 C.F.R. 404.1567 and 416.967 as lifting no more than 20 pounds occasionally, ten pounds frequently; and walking/standing up to six hours total in an eight-hour workday. Claimant has further limitations as reflected in the hypothetical posed to the vocational expert, below. (Tr. 34)
>
> --------
>
> The vocational expert was asked to consider a younger individual with past relevant work as stated, three years of college with two degrees (registered nurse and business administration) and work history as above. She can do both light and sedentary work, she can stand/walk two hours and sit six hours per workday. She requires a sit/stand option with no prolonged standing or walking in excess of one hour at a time. She may not climb ropes, scaffolds, or ladders but may occasionally climb stairs or ramps; she cannot drive commercially due to sleep apnea; she can only occasionally bend, stoop, kneel, crouch or crawl. She cannot tolerate concentrated dust, gases, fumes, temperature extremes or excess humidity.
>
> Mentally, she requires repetitive work with no frequent changes in work routines, no requirement for problem-solving, independent planning, or goal setting. Fast-paced assembly lines are ruled out, as are rigid production schedules. She can only occasionally interact with fellow-workers, supervisors, or the general public and should work primarily with objects as opposed to people.
>
> To this the expert responded that 1. The claimant could not perform her past relevant work, which was performed at the medium to heavy exertional level, and 2. The following jobs would fall within those parameters: Clerical, such as credit card, file or general office clerk, Dictionary of Occupational Titles 209.562-010: 350,000 jobs nationally; 4,500 in Kentucky. These are light jobs. At the sedentary level, Ms. Forrest cited the same jobs, Dictionary of Occupational Titles numbers 209.587-014 and 215.367-010: 450,000 jobs in the nation; 6,000 in Kentucky. (Tr. 35-36)

STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by an error of law, and to determine whether substantial evidence supports the decision of the Commissioner, 42 U.S.C. §405(g); Elam ex. Rel. Golay, v. Commissioner, 348 F.3d 124, 125 (6th Cir. 2003). Where the Commissioner's decision is supported by substantial evidence, the reviewing court must affirm, Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, Kirk v. Secretary of HHS, 667 F.2d 524 (6th Cir. 1981); Jones v. Secretary of HHS, 945 F.2d 1365 (6th Cir. 1991).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight, Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the court even thought the record might support a contrary conclusion, Smith v. Secretary of HHS, 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts," Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

Plaintiff argues that the ALJ committed the following errors: 1) the ALJ erred by failing to find claimant's depression a "severe" impairment; 2) the ALJ erred in rejecting the August 23, 2005 disabling opinions from her treating physician Dr. Eric Loy; 3) the ALJ erred in rejecting the disabling mental assessment of Dr. Lew Hortilossa; 4) the ALJ erred in failing to consider the third-party statements of plaintiff's mother dated November 4, 2003; and 5) the residual functional capacity findings by the ALJ and the controlling hypothetical question differ substantially. This

3

case was denied at the fifth and final step of the sequential evaluation process, with a vocational expert testifying at the hearing.

## ANALYSIS

1.  <u>ALJ failed to consider depression a severe impairment</u>.

Plaintiff's first argument is that the ALJ failed to consider her depression a severe impairment, arguing that the record establishes plaintiff has been treated for depressive disorder with Adanta Psychological Services from February 2, 2001 through the date of the hearing. It is true that the ALJ did not identify depression as one of claimant's severe impairments at step 2 of the sequential evaluation process; however, this error is not fatal to the decision.

The determination whether a mental impairment "significantly limits" a claimant's ability to do one or more basic work activities is based upon the degree of limitation in four broad functional areas. 20 C.F.R. 404.1520a(c)(3). The four broad functional areas are 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. 20 C.F.R. 404.1520a(c)(3). The degree of limitation in the first three functional areas is rated according to the following five-point scale: none, mild, moderate, marked and extreme. 20 C.F.R. 404.1520a(c)(4). The degree of limitation in the fourth functional area is rated according to the following four-point scale: none, one or two, three, four or more. 20 C.F.R. 404.1520a(c)(4). If the degree of limitation in the first three functional areas is found to be "none" or "mild" and the degree of limitation in the fourth area is found to be "none," then the mental impairment is considered non-severe, unless the evidence otherwise indicates there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. 404.1520a(d).

The ALJ adequately and accurately summarized the evidence regarding plaintiff's mental impairment, including medical evidence from her treating sources at the Adanta clinic Dr. Hortilossa and therapist Libby Long. The ALJ also discussed the findings of state agency psychologists who reviewed the claimant's psychiatric history. Further, the ALJ recognized a conflict between the limitations expressed by treating source Dr. Hortilossa (including poor to no ability to tolerate work stress or to understand, remember, and carry out either complex or detailed work instructions) and the state agency psychologists (who collectively were unable to find more than a few moderate limitations).

At the second step of the sequential evaluation process, the claimant has the burden of proof. The state agency opinions specifically considered claimant's claims of major depression, and found that there was insufficient evidence to support more than a few moderate mental limitations. The ALJ was entitled to rely upon those assessments, as state agency psychological consultants and other program psychologists are highly qualified psychologists who are also experts in Social Security disability evaluation, 20 C.F.R. §404.1527(f)(2)(I). Nonetheless, the ALJ gave plaintiff the benefit of the doubt when including some work-related limitations in the RFC findings and controlling hypothetical. Thus, the Court finds that any error in the ALJ's failure to identify depression as a severe impairment was harmless.

    2.    <u>The ALJ erred in rejecting the August 23, 2005 disabling opinions from her treating physician Dr. Eric Loy</u>.

Plaintiff contends that it was error for the ALJ to reject this disabling opinion from her treating physician, Dr. Loy. In <u>Wilson v. Commissioner</u>, 378 F.3d 541 (6th Cir. 2004), the court confirmed the weight ordinarily due the opinion of a treating physician. <u>Wilson</u> also underlined the

fact that the courts are bound to hold the Commissioner to the requirements of 20 C.F.R. §404.1527(d)(2), which calls for the ALJ to state clear reasons for rejecting or for limiting the weight given the opinion of a treating physician. See also Social Security Ruling 96-2p. Based upon this Court's review of the treatment records, the ALJ had substantial justification for severely limiting the weight given to the disabling opinions of Dr. Loy contained in the August 23, 2005 assessment. Specifically, the assessment is not supported, except for mention of hypoglycemia. The ALJ stated sufficient reasons to reject this disabling opinion, noting that it is inconsistent with her stated ability to walk three miles, and with another of her treating physician's opinions that her ability to stand, sit or walk are unaffected by complaints of generalized weakness (Tr. 184). In addition, it is at odds with the numerous state agency opinions contained in the record (Tr. 170; 389-91; 414-15; 547-58; 579-87). The Court finds substantial justification for the ALJ's decision to discount the disabling opinions of Dr. Loy, and declines to disturb this finding.

3)      The ALJ erred in rejecting the disabling mental assessment of Dr. Lew Hortilossa.

Dr. Hortilossa was the claimant's treating psychiatrist who provided a mental residual functional capacity assessment indicating poor to no ability to tolerate work stress or to understand, remember and carry out either complex or detailed work instructions (Tr. 737-38). The ALJ accepted that plaintiff could perform only simple job instructions, but properly discounted some of the limitations expressed by Dr. Hortilossa. He noted that a poor to no ability to tolerate work-related stress is inconsistent with her uninterrupted employment record from 1975 through part of 2001, the report was prepared by an unacceptable medical source (therapist Libby Long) and was only belatedly initialed by Dr. H, the chart was reopened on 10/20/03 less than a month after she filled her social security claims, and she was seen only twice before returning to her treating

6

physician for psychotropic medication prescriptions. The chart was closed on 01/28/03 for failure to keep appointments and later reopened. On 08/16/04 she was doing okay, despite bereavement over the death of her grandmother. As of July 2004 she was caregiver for an ailing 93 year old senile aunt. On 03/01/04 "she looks well, feeling better, can't hold a job, can't get my life right," having returned to the psychiatric evaluation per the recommendation of her attorney, needing "help getting her disability." She also gives a history of a discordant family. In summary, the ALJ properly discounted the disabling mental opinion of Dr. Hortilossa as it was inconsistent with the evidence as a whole, including plaintiff's own testimony about her daily activities.

Since the disabling opinion of Dr. Hortilossa was not well supported by medically acceptable clinical and laboratory diagnostic techniques and are not consistent with other substantial evidence in the record, it was appropriate for the ALJ to discount the opinions. Social Security Ruling 96-2p; 20 C.F.R. 404.1527(d)(2); Bogle v. Sullivan, 998 F.2d 342, 347-348 (6th Cir. 1993); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 857 (6th Cir. 1990). Moreover, the ALJ complied with the requirement that he set forth an explanation for the weight accorded to an opinion from a treating source. Social Security Ruling 96-2p; 20 C.F.R. 404.1527(d)(2); Wilson v. Commissioner of Social Security, 378 F.3d 541, 545-546 (6th Cir. 2004). Giving the claimant the benefit of the doubt, the ALJ did include certain mental limitations in his residual functional capacity findings and in the controlling vocational hypothetical. The ALJ properly relied upon the opinions of the reviewing state agency physicians, and the decision is supported by substantial evidence of record.

4) <u>The ALJ erred in failing to consider the third-party statements of plaintiff's mother dated November 4, 2003.</u>

The claimant argues that – in contravention of the holding in <u>Lashley v. Secretary of HHS</u>, 708 F.2d 1048, 1054 (6th Cir. 1983) – the ALJ failed to consider the statements of her mother in a November 2, 2003 letter which indicates she is unable to perform yard work and household chores; that she tires easily; has difficulty with standing, memory and completing tasks; and difficulty lifting, bending, standing and walking (Tr. 494-502). The ALJ's opinion notes that he considered both medical and "other" evidence contained in the record (Tr. 35). The observations contained in the mother's statement are a recitation of the claimant's own subjective complaints. The Commissioner cites <u>Allison v. Commissioner</u>, No. 96-3261, 1997 WL 103369 (6th Cir. Mar. 6, 1997) as distinguishing <u>Lashley</u>, wherein the court found it irrelevant that the ALJ failed to particularly discuss the testimony of a claimant's son because "neither precedent nor common sense requires written discussion of every single piece of evidence." The Court finds the logic of <u>Allison</u> persuasive in this case, particularly where the mother's statement is simply cumulative evidence, including substantially the same information as the claimant's subjective complaints.

5) <u>The residual functional capacity findings by the ALJ and the controlling hypothetical question differ substantially</u>.

The claimant argues that there is a discrepancy between the residual functional capacity findings by the ALJ and the limitations contained in the controlling hypothetical question to the vocational expert. The RFC findings are that plaintiff "can stand/walk two hours" and the hypothetical question notes that plaintiff can "stand/walk up to two hours each." The Court agrees that standing alone, these two findings represent a significant discrepancy. However, the

discrepancy is cured by the fact that both the RFC and the hypothetical clarified that plaintiff could sit for up to six hours a day and the need for the sit/stand option with no prolonged standing and walking in excess of one hour. The vocational testimony offered appears to clear up any discrepancy between the ALJ's RFC findings and the general definition of light work.

## CONCLUSION

The ALJ's decision is supported by substantial evidence and must be upheld. A Judgment in conformity with this Memorandum Opinion has this day entered.